IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 1:18-cv-01123-RBJ

MDM GROUP ASSOCIATES, INC.,

    Plaintiff,

v.

JLT SPECIALTY LIMITED d/b/a Lloyd & Partners Limited,
a United Kingdom limited company;
AMTRUST SYNDICATES LIMITED d/b/a Amtrust at Lloyd's,
a United Kingdom limited company;
JOHN SMITH, an individual resident of the United Kingdom; and
PETER YOUNG, an individual resident of the United Kingdom,

    Defendants.

## ORDER

This matter is before the Court on defendants John Smith and Peter Young's motion to dismiss [ECF No. 38]. For the reasons stated below, the Court GRANTS the motion, but the claims against defendants are dismissed without prejudice. Plaintiff MDM Group Associates, Inc.'s request for leave to amend its complaint is GRANTED.

### I. BACKGROUND

MDM Group Associates, Inc. ("MDM") is a Delaware corporation with its principal place of business in Steamboat Springs, Colorado. Complaint, ECF No. 2 at ¶1. The company provides insurance and other financial products and services to individuals and businesses. *Id.* at ¶7. This dispute centers on two financial services that MDM offers—its Trip Cancellation

Program ("TCP") and Security Deposit Waiver ("SDW")—and three business relationships born out of MDM's attempts to launch these services.

### A. MDM's Business Relationships with LPL and ANV.

In 2012 MDM developed an underwriting market and a proprietary description of coverage for the TCP, a specialty insurance product that protects travelers against loss on prepaid travel expenses when they are unable to take their trip or when their trip is interrupted. *Id.* at ¶8. To underwrite this insurance offering, in August 2012 MDM entered into an agreement with defendant AmTrust Syndicates Limited ("ANV"), a London-based insurance company. *Id.* at ¶¶10–11. MDM and ANV signed a licensing and marketing agreement wherein the companies agreed that MDM would be the sole marketing and sales representative of TCP, and that ANV would refrain from creating or offering competing trip-cancellation products during a period of exclusivity. *Id.* at ¶11. To comply with London insurance-market regulations, MDM hired defendants Lloyd & Partners Limited ("LPL") to be its London-based broker for MDM's TCP and SDW programs. *Id.* at ¶14. LPL served as an intermediary between MDM and its London-based underwriter, ANV. *Id.*

In 2012 defendants Smith and Young were LPL insurance brokers residing in London. *Id.* at ¶16. Messrs. Smith and Young worked for LPL until late November 2014 and December 2014, respectively. *Id.* They took a short break in employment until March 2015, when they started working for Ambris LLP ("Ambris"), the company that eventually replaced ANV as MDM's underwriter. *Id.* at ¶¶14, 16.

### B. MDM's Business Relationship with PAC7.

MDM also contracted with PAC7, LLC ("PAC7"), a travel and property-rental insurance agency based in South Carolina. *Id.* at ¶17. The contract, which went into effect on September

1, 2012, appointed PAC7 as the sole representative for marketing and selling the TCP and SDW in North America and the Caribbean. *Id.* at ¶¶19–20.

## C. **Alleged Wrongful Conduct.**

The complaint alleges that LPL and ANV enabled MDM's client, PAC7, to eliminate MDM from the equation so that PAC7 could contract directly with LPL and ANV. *Id.* at ¶27. The alleged plan started in October 2013, when LPL flew a PAC7 employee to London to meet with ANV and MAPFRE Insurance (another prospective underwriter for MDM's programs). *Id.* at ¶28. Once MDM got word of this meeting, it informed LPL to not contact any MDM clients in the future without including MDM in the communication. *Id.* at ¶29. According to MDM, LPL continued to use its brokers, Messrs. Smith and Young, to directly communicate with PAC7, ultimately resulting in LPL allegedly marketing MDM's TCP in London through other U.S.-brokers without MDM's consent. *Id.* at ¶¶30–31.

According to the complaint, Messrs. Smith and Young maintained their improper relationship with PAC7 during their five-month break between jobs. *Id.* at ¶33. MDM also alleges that they "communicated with representatives of MAPFRE in December of 2014." *Id.* Then, in March 2015, the same month Messrs. Smith and Young began working for Ambris, PAC7 changed its broker of record from LPL to Ambris without consulting MDM. *Id.* at ¶35.

## D. **Procedural History**.

MDM filed its complaint in Colorado state court on April 16, 2018. ECF No. 2. Defendants removed the case to federal court on May 10, 2018. ECF No. 1. MDM originally asserted seven common law claims: (1) breach of contract against ANV; (2) breach of fiduciary duties against LPL; (3) fraudulent concealment against LPL and ANV; (4) fraudulent misrepresentation against LPL and ANV; (5) tortious interference with contracts against all

3

defendants; (6) tortious interference with prospective business relations against all defendants; and (7) conspiracy against all defendants. Following the initial scheduling conference before this Court, MDM, ANV, and LPL jointly moved to dismiss all claims asserted against ANV and LPL. ECF Nos. 48, 50. Upon granting those motions, only the last three claims against defendants Smith and Young remained.[1] On August 22, 2018 defendants moved to dismiss the claims against them per Fed. R. Civ. P. 12(b)(2), and, alternatively, Fed. R. Civ. P. 12(b)(6). ECF No. 38. MDM responded in opposition, and defendants replied. ECF Nos. 46, 47. The motion has been fully briefed and is now ripe for review.

## II. STANDARD OF REVIEW

### A. Personal Jurisdiction Generally and Fed. R. Civ. P. 12(b)(2).

A district court sitting in diversity must exercise personal jurisdiction according to both the forum state's long-arm statute and the Constitution. *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990). Because Colorado's long-arm statute confers the maximum jurisdiction permitted under the Due Process Clause of the Fourteenth Amendment, *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008), there is no "need for [a long-arm] statutory analysis separate from the due process inquiry required by *International Shoe Co. v. State of Washington*, 326 U.S. 310 [] (1945), and its progeny." *Id.* (quoting *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002)). As such, the personal jurisdiction inquiry collapses into a single constitutional question.

"Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Old Republic Ins. v. Cont'l Motors, Inc.*, 877 F.3d 895,

---

[1] Because LPL and ANV are no longer defendants in this case, any reference to "defendants" hereinafter refers solely to Messrs. Smith and Young.

903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). This test may be satisfied through a showing of either general or specific jurisdiction. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090–91 (10th Cir. 1998). General jurisdiction exists when a defendant has "continuous and systematic" contacts in the state, even if those are unrelated to the pending litigation. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction exists when a defendant "purposefully directed" its activities at the forum state and the alleged injuries "arise out of or relate to" those activities. *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King*, 471 U.S. at 472). Courts should focus on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The test is defendant-focused, meaning that a court must ensure that this relationship arises out of "contacts that the 'defendant *[it]self*' creates with the forum State." *Id.* (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). In other words, the contact cannot solely be between the plaintiff and the forum state. *Id.*

To satisfy the minimum contacts requirement, the plaintiff bears the burden of showing that personal jurisdiction exists. *AST Sports Sci.*, 514 F.3d at 1056. However, a plaintiff's "burden is light" at this stage. *Id.* In ruling on a Rule 12(b)(2) motion without holding an evidentiary hearing, a plaintiff "need[s] only [to] make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings*, 149 F.3d at 1091. To do so, the plaintiff "may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* The burden then shifts to the defendant to show that jurisdiction is not proper. *Id.* Any factual discrepancies must be resolved

in the plaintiff's favor unless the allegations in the complaint are contradicted by affidavits. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

If sufficient minimum contacts exist, I will move on to the second prong of the due process inquiry, where I determine whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)). In other words, the exercise of personal jurisdiction over the defendant must be "reasonable" in light of the circumstances of the case. *Id.* Minimum contacts and reasonableness work hand in hand; "[t]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Trujillo,* 465 F.3d at 1221 (citation omitted).

**B. Fed. R. Civ. P. 12(b)(6).**

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, the plaintiff has met the threshold pleading standard. *See, e.g., Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## III.  ANALYSIS

Defendants move to dismiss on Rule 12(b)(2) and 12(b)(6) grounds.  Because I conclude that this Court lacks personal jurisdiction over defendants, I do not analyze whether plaintiff failed to state a claim against defendants.

### A.  <u>General Jurisdiction</u>.

It is plain to me, and plaintiff does not argue to the contrary, that this Court lacks general jurisdiction over defendants.  Accordingly, I proceed directly to the specific jurisdiction inquiry.

### B.  <u>Specific Jurisdiction</u>.

In their motion, defendants note that almost all the alleged wrongdoing in the complaint concerning defendants relates to actions taken during their employment with and on behalf of LPL and Ambris.  ECF No. 38 at 5–6.  Thus, they allege, the agency theory of personal jurisdiction should insulate the individual defendants from this Court's jurisdiction.  *Id.* at 6.  Defendants further allege that asserting personal jurisdiction over defendants would be unreasonable because they work and reside in London and have no contact with Colorado.  *Id.* at 9.  In response, plaintiff argues that defendants' intentional tortious conduct constitutes a basis for purposeful direction under the "harmful effects test" established in *Calder v. Jones*, 465 U.S. 783 (1984).  ECF No.46 at 6–9.

Plaintiff's argument fails for two reasons.  First, personal jurisdiction generally may not be premised on actions taken by the defendant on behalf of the defendant's employer.  It is well established in the Tenth Circuit that corporate employees are not subject to personal jurisdiction for acts "carried out solely in the individuals' corporate or representative capacity." *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987).  In the present case, nearly all the alleged wrongful conduct concerning defendants occurred while they were

employed by LPL and at the direction of LPL.  *See* ECF No. 2 at ¶¶27–32, 39, 41, 45.  To illustrate one of the many examples, the complaint states, "Despite assurances to the contrary, *LPL, through its brokers, Smith and Young*, continued to directly communicate with PAC7 . . . ." *Id.* at ¶30 (emphasis added).  In the absence of facts indicating that defendants were acting in their personal capacity rather than their corporate capacity, I decline to consider defendants' actions taken during their employment with LPL in determining whether they purposefully directed their activities toward Colorado.

Second, the allegations against defendants in their individual capacities are insufficient to survive a Rule 12(b)(2) attack.  While it is conceivable, perhaps even likely, that defendants continued to develop their allegedly wrongful business relationship during their five-month break in employment, plaintiff's complaint fails to plead sufficient facts to show this conduct.

Plaintiff argues in its response brief that there are three paragraphs in the complaint—paragraphs 33, 34, and 35—which demonstrate facts to support personal jurisdiction.  Those paragraphs read as follows:

- "Smith and Young, in their individual capacities, continued the improper relationship with PAC7.  Smith and Young, on behalf of PAC7, communicated with representatives of MAPFRE in December of 2014, after leaving LPL and prior to joining Ambris."  ECF No. 2 at ¶33.

- "Upon information and belief, Smith and Young violated restrictive covenants with LPL by retaining client files and continuing to broker agreements in their individual capacities, while intentionally and improperly interfering with MDM's existing and prospective contractual relations."  *Id.* at ¶34.

- "PAC7/RATG subsequently changed its Broker of Record ("BOR") from LPL to Ambris in March of 2015. By the end of April 2015, Smith and Young, on behalf of Ambris, forwarded an agreement to PAC7, acknowledging that 'after nearly three years we at last are dealing with PAC7 "officially" as our client.' The BOR was changed from LPL to Ambris without consultation or notification to MDM." *Id.* at ¶35.

Referencing these three paragraphs, plaintiff makes three bold assertions. First, plaintiff argues that defendants, after leaving LPL, "continued the tortious conduct that they first initiated while serving as agents for LPL." ECF No. 46 at 3 (citing ECF No. 2 at ¶¶33, 34). The response goes on to state that "MDM is aware of at least one instance in which Smith and Young interfered with MDM's anticipated business relationship with a prospective underwriter for MDM's programs, MAPFRE." *Id.* (citing ECF No. 2 at ¶33). Finally, plaintiff states, "by [defendants'] own admission that, in the interim between leaving LPL and joining Ambris, they were 'unofficially' interfering with MDM's client." *Id.* at 8–9 (citing ECF No. 2 at ¶35).

I find that plaintiff's three arguments and the three paragraphs it cites for support are unpersuasive and conclusory. Paragraph 33 lacks sufficient facts which would support personal jurisdiction over defendants. Simply alleging that defendants communicated with MAPFRE representatives, a non-Colorado citizen, sometime in December 2014 is insufficient. Plaintiff must plead facts which would show that the communication was in furtherance of the alleged tortious conduct aimed at Colorado. Moreover, paragraph 33 states that defendants made these communications on behalf of PAC7, not in their individual capacities. Likewise, paragraph 34 is conclusory and fails to plead facts that demonstrate defendants' individual contacts with Colorado; these allegations concern actions taken by defendants outside the forum. Lastly, despite plaintiff's assertion in its response brief, paragraph 35 does not contain an admission that

they were interfering with MDM clients. And, notwithstanding plaintiff's speculation about the meaning of the message in this paragraph, paragraph 35 states that defendants were speaking on behalf of Ambris, not in their individual capacities.

Perhaps recognizing the weaknesses of its complaint, plaintiff attempted to bolster its position by submitting an affidavit with its response brief. In that affidavit, Joseph McNasby, president of MDM, stated that in "December 2014, after Smith and Young were no longer employed by LPL, they continued to broker deals with PAC7 and MAPFRE. Smith and Young were on 'gardening leave' in December 2014, yet continued to send emails and conduct business from their personal email extensions . . . ." ECF No. 46-3 at ¶21. Mr. McNasby concluded his affidavit with the following:

> I am in possession of numerous emails from Smith and Young to both PAC7 and ANV, in which MDM is not included. The contents of these emails establish Smith and Young's conspiracy to defraud MDM by cooperating with LPL, PAC7 and ANV to interfere with MDM's Colorado contracts and MDM's prospective business relationships. The emails also detail Smith and Young's efforts to conceal from MDM the nature and extent of their wrongful communications with LPL, PAC7, and ANV.

*Id.* at ¶25. Like the operative paragraphs in the complaint, these two paragraphs are unpersuasive and merely state legal conclusions. And although alleging that defendants "continued to broker deals with PAC7 and MAPFRE" is closer to meeting the pleading standard than plaintiff's other conclusory statements, I find that Mr. McNasby's allegation is a distinction without a difference. The affidavit fails to provide facts which demonstrate that defendants took such actions.

Despite the "light" burden plaintiff bears at this stage, the complaint fails to plead sufficient facts which show that defendants had personal contact with the forum in their individual capacities. However, if it is true that plaintiff is in possession of numerous emails

10

which tend show the existence of a conspiracy to harm MDM, then plaintiff should have no trouble pleading facts in an amended complaint that would show defendants had contact with Colorado. But until then, plaintiff has failed to plead facts that, if true, would support its assertion that defendants committed an intentional tort expressly aimed at Colorado, either in its complaint or in its supporting affidavit.

Having found that plaintiff has failed to plead a prima facie showing of purposeful direction, there is no need to analyze whether the assertion of personal jurisdiction would be unreasonable. If plaintiff satisfies the pleading standard in its amended complaint, upon filing a renewed motion to dismiss, I will address the remaining jurisdictional requirements argued by defendants in their motion along with their Rule 12(b)(6) argument.[2]

**ORDER**

(1) Defendants' motion to dismiss [ECF No. 38] is GRANTED, but the claims are dismissed without prejudice.

(2) Plaintiff's request for leave to amend its complaint is GRANTED. Plaintiff has thirty days from the date of this order to file an amended complaint.

DATED this 21th day of February, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

---

[2] Plaintiff asserts that "Smith and Young must remain as parties to this action to avoid undue prejudice to MDM in connection with its claims against the other defendants." ECF No. 46 at 10. However, after plaintiff agreed to dismiss the claims against the other defendants, plaintiff's rationale for requesting leave to amend is no longer valid. Additionally, I question the futility of amending the complaint considering some of the arguments defendants raise in their motion. Nonetheless, I grant plaintiff's request, should it so choose, to amend its complaint within thirty days of this order.